### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**MITCHELL JOSEPH ADAMS, JR.**

**VERSUS**

**COMMISSIONER SOCIAL SECURITY ADMINISTRATION**

**CIVIL ACTION**

**NO. 21-01246**

**SECTION: "I" (4)**

### REPORT AND RECOMMENDATION

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 U.S.C. § 405(g). The Commissioner denied Mitchell Joseph Adams, Jr. ("Adams") claim for Disability Insurance Benefits under Title II of the Social Security Act, Title 42 U.S.C. § 1382(c). The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(b) and Local Rule 19.02E(b), for the submission of Proposed Findings and Recommendations.

### I.    Factual Summary

Mitchell Joseph Adams ("Adams"), born on January 4, 1984, was twenty-five years old (25) and classified as a younger person on the alleged disability onset date.   Rec. Doc. 12-8, p. 9.   Adams alleges disability as a result of a bulging disc, seizures, and migraines which began on October 17, 2013.   Rec. Doc. 12-8, p. 23-25.   Adams also claimed that his activities of daily living are impacted because he needs reminders to take care of personal needs and grooming.   He complained that his memory, ability to complete tasks, concentration, ability to understand   and follow instructions, and ability to get along with others were impacted by his impairments.

On May 1, 2014, Adams filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging disability that began on October 17, 2013. Rec. Doc. 12-2. The claim was initially denied on February 19, 2015.   Rec. Doc. 12-1, Tr. 2.   Adams, thereafter, submitted a request for hearing on February 19, 2015 before Administrative Law Judge ("ALJ")

Kelley Day. *Id*. The hearing took place on August 26, 2020 by telephone due to extraordinary circumstances presented by the COVID-19. R. Doc.12-2, Tr. 12.

Thereafter on September 21, 2020, the ALJ found that Adams met the insured status requirements of the Social Security Act on June 30, 2016. *Id*. at Tr. 15, Finding 1. The ALJ further found that Adams did not engage in substantial gainful activity during the period from his alleged onset date of October 17, 2013, through his date last insured of June 30, 2016. *Id*. at TR. 16, Finding 2. The ALJ further found that through the date of last insured, Adams had the following severe impairments: degenerative disc disease, degenerative joint disease, status-post shoulder surgery, arthritis, seizure disorder, migraine headaches, obesity, anxiety disorder, mood disorder, and learning disorder. *Id*. at Tr. 15, Finding 3. The ALJ further held that through the date last insured, Adams did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at Tr. 16, Finding 4.

At Step 5, the ALJ found that through the date last insured, Adams had the residual functional capacity ("RFC") to perform light work except for the occasional climbing ramps/stairs, stooping-kneeling, crouching, and crawling. *Id*. at Tr. 19, Finding 5. The ALJ found that Adams should avoid work at unprotected heights, with dangerous moving machinery, open bodies of water, and open flames. *Id*.

The ALJ found that Adams should avoid concentrated exposure to extreme heat, noise, and vibration, and only occasional use of computer screen. *Id*. The ALJ also found that there should be only occasional exposure to bright or flashing lights, avoidance of concentrated exposure to chemical smells, no driving as part of the job, and a limitation to the performance of

simple/routine work with occasional contact with the public, coworkers, and supervisors. *Id*. The ALJ found that there should be no fast-paced production requirements. The ALJ further found that Adams could sit for up to one hour uninterrupted before needing to stand up while remaining on task, that he could stand and/or walk for up to 2 hours uninterrupted before having to change positions, and that he could stand and/or walk for up to 6 hours of an 8-hour day. *Id*. Additionally, the ALJ held that Adams was unable to perform any past relevant work as a rigger, janitor and a well service worker,. *Id*. at Tr. 26, Finding 6.

The ALJ found that Adams had a least a high school education and that the transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant "not disabled." *Id*. at Tr. 27, Finding 8 & 9. The ALJ found that considering Adams' age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Adams could have performed. Rec. doc. 12-2, Finding 10, Tr. 27. Relying upon vocational expert testimony, the ALJ found that there are jobs within his RFC performing the full range of light work, such as a routing clerk, labeler document specialist, surveillance system monitor, press clipping trimmer, and addressor. *Id*.

Adams now challenges the ALJ's decision that he was not disabled as defined in the Social Security Act from October 17, 2013, the alleged onset date, through June 30, 2016, the date last insured. Adams alleges that the ALJ failed to articulate sufficient reasons to reject the applicability of 20 CFR § 404 Appendix 1, Listing 1.04. Rec. Doc. 1. Adams alleges that the ALJ 's RFC is unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion of Dr. Guidry, the agency's examining physician, in accordance with the regulations,

and provided no reasoning for finding the opinion only partially persuasive.

Consequently, the ALJ contends that Adam's first issue lacks merit and may be dismissed. The Commissioner further contends that substantial evidence supports the ALJ's RFC determination and weight assigned to the opinion of consultative psychological examiner Lynn L. Guidry, Ph. D.

## II.    <u>Standard of Review</u>

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo*, or substitute its judgment for that of the Secretary. *Allen v. Schweiker*, 642 F.2d 799, 800 (5th Cir. 1981). If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing 402 U.S.C. § 405(g)); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981).

Substantial evidence is more than a scintilla and less than a preponderance and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion. *See Richardson*, 402 U.S. at 401. It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "contrary medical evidence." *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

The concept of disability is defined in the Social Security Act, as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which . . . has lasted . . . for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). Section 423(d)(3) of the Act further defines "physical or mental impairment" as "an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is capable of engaging in any substantial gainful activity, the Secretary applies a five-step sequential evaluation process.   The rules governing the steps of this evaluation process are: (1) a claimant who is working and engaging in a substantial gainful activity will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment;" (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and (5) if a claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether is he can do other work. *See Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The burden of proof is on the claimant for the first four steps but shifts to the Secretary at step five. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**III.**   <u>**Analysis**</u>

Adams contends that the ALJ's failure to include any analysis of Listing 1.04 implies that Adams has not presented a plausible case for satisfaction of the Listing criteria. However, according to Adams, the evidence showed that he had a herniated disc with nerve root

involvement at the L4-5 and L5-S1 levels.    This implication according to Adams is misleading because the record confirms that the criteria for directing a finding of disability under Listing 1.04 were met.    Adams contends that because he has a disorder of the spine, as shown on an MRI and through other medical evidence, the ALJ's failure to identify the listing, which his symptoms failed to meet, requires a remand.

The Commissioner contends that substantial evidence supports the ALJ's determination that Adams' back impairment did not merit consideration of Listing 1.04.    Rec. Doc. 18.    The Commissioner contends that the Adams' argument mis-framed select evidence and fails to show that he met every requirement for Listing 1.04.    *Id*.    The Commissioner contends that during the relevant window October 17, 2013, to the date last insured, June 30, 2016, Adams worked sometimes two jobs simultaneously and kept his earnings below the level of substantial gainful activity.    *Id*.    The Commissioner contends that while Adams provided six hundred pages of medical records from 2013 to 2018, its substance fails to meet his burden.    The Commissioner further contends that while Adam's back impairment was severe, it did not meet each criterion required by the Listing Level.

The listings criteria are demanding and stringent. *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994). The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a Step 3 impairment determination. *Sullivan v. Zebley*, 493 U.S. 521, (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir.

1990); *Washington v. Barnhart*, 413 F.Supp.2d 784, 793 (E.D. Tex. 2006); 20 C.F.R. § 416.926(d) (2005). When a claimant fails to sustain that burden, courts must conclude that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders*, 914 F.2d at 619–620; *Washington*, 413 F.Supp.2d at 793. Importantly for this case, a claimant may not establish Listing level severity through subjective testimony. *See Zelbley*, 493 U.S. at 530; *Selders*, 914 F.2d at 619; *Washington*, 413 F.Supp.2d at 793.

The issue presented here is whether the ALJ was required to consider Listing Level 1.04 at Step 3 in assessing whether Adams was disabled from his alleged onset date, October 17, 2013, through his date last insured, June 30, 2016.   The Code of Federal Regulations defines Listing Level 1.04 as: Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); Or……….

To demonstrate the required loss of function for a musculoskeletal impairment, Adams must demonstrate either an "inability to ambulate effectively on a sustained basis ..., or the inability to perform fine and gross movements effectively on a sustained basis." 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2).

The ALJ noted at Step 5, but not Step 3, that Adams had an MRI of the lumbar spine on January 14, 2016, which revealed straightening of the lumbar lordosis reflecting muscle spasm and a disc herniation to the right of the L4-5 and L5-S1 with a full thickness annular fibrosis tear and disruption of the disc.  *See* Rec. Doc. 12-2, Tr. 21.  The ALJ noted that Adams was examined by Dr. Zeringue and during the exam there was pulling at the hamstrings during straight leg raise testing on the right and generalized tenderness to palpation with muscle tightness/spasm of the lumbar paraspinals with the right side more involved than the left side. Rec. Doc. 12-2, Tr. 21.

The ALJ noted that neurologically, Adams deep tendon reflexes were decreased but equal, bilateral, and symmetric with the remainder of the physical exam being essentially normal. *Id*. The ALJ noted that Adams received an epidural steroid injection which provided some relief until the injury was aggravated during gardening.  *Id*.  The ALJ noted that Adams had a second epidural steroid injection after a consultation with Dr. Shamieh who found numbness in the right leg, decreased range of motion, tenderness to palpation, positive straight leg raising testing, and decreased sensation to right lateral calf.  *Id*.  The records also show and the ALJ noted that on May 26, 2016, Dr. Zeringue noted that Adams saw Dr. Shamieh who recommended surgery, which was scheduled for June 5, 2016, within the insured period.  He noted numbness in the front of Adams leg, which went below his knee, although there was a negative straight leg test. Rec Doc. 12-2. Tr. 21. Rec. Doc. 13-2, Tr. 1123.

The medical evidence shows that on March 14, 2016, Dr. Kaufman noted that an MRI

on January 24, 2016, showed a notable disc herniation to the right of the L4-L5 disc which was likely the pain generator.    He noted that there was also a full thickness annular tear and disruption of the disc.    Rec. Doc. 13-2, Tr. 1101, 1117.    On physical examination Dr. Kaufman found that Adams' deep tendon reflexes were decreased, equal and bilateral and symmetric, and that he also had radicular symptoms down the right lower extremities.    *Id*.  Two weeks later, Adams had a 2 Level Lumbar Epidural Steroid Injection at the L5 and S1 levels.    *Id*. at Tr. 1103.

In contrast the Commissioner relies upon the medical evidence two years after the insured period closed, and the medicals show that beginning January 22, 2018, his straight leg raise test were negative and reflexes were normal. *Id.* at Tr. 1248, 1254, 1401, 1403, 1483, 1488, 1495, 1501.    The ALJ, however did not consider the Listing Level at Step 3 and no medical evidence was introduced to contradict the findings that existed in June 2016.    The ALJ was required to discuss the evidence offered in support of Adams' claim and explain why his musculoskeletal condition did not meet or equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.    In fact, at Step 3 the ALJ did not mention Adams' disc herniation, that at the time of the hearing Adams was status post back surgery, or why Listing Level 1.04 did not apply.

Absent some explanation from the ALJ to the contrary, Adams would have appeared to have met his burden of demonstrating that he met the listing level and therefore his substantial rights were affected by the ALJ's failure to set out the bases for her decision at step three.    *See Audler v. Astrue,* 501 F.3d 446 (5th Circ. 2007).

At step three of the sequential analysis process, the ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how the ALJ reached the conclusion that the claimant's symptoms are insufficiently severe to meet any listed impairment. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). A "bare conclusion" that a claimant does not meet the criteria of any Listing "is beyond meaningful judicial review." *Id*. (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996)).

However, even if a court determines that the ALJ erred in failing to state the reasoning for an adverse determination at step three, a reviewing court must still determine whether the error was harmless. *Audler*, 501 F.3d at 448. (citing *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988)). Procedural perfection is not required in administrative proceedings and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). "That showing typically requires a claimant to demonstrate that her impairment satisfies the criteria of a particular listing." *Smith v. Astrue*, 914 F. Supp. 2d 764, 784 (E.D. La. 2012) (citing *Audler*, 501 F.3d at 448-49).

There is no evidence in the record that the ALJ considered Listing level 1.04 and an analysis of the opinion at Step 3 confirms that had the ALJ considered  1.04, there was enough evidence during the insured period to conclude that Adams met the listing requirement.   The Court therefore finds that the ALJ's opinion is not based upon substantial evidence and the matter is remanded for consideration of Listing level 1.04.

Because the court finds that the ALJ's opinion should be vacated and remanded for

additional proceedings at step 3, it does not reach Adam's additional arguments.

**IV.**    <u>**Recommendation**</u>

It is **RECOMMENDED** that the ALJ's decision denying Mitchell Joseph Adams' claim for Disability Insurance Benefits be **VACATED and REMANDED** for additional proceedings at Step 3 regarding listing level 1.04.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5ᵗʰ Cir. 1996)[1].

New Orleans, Louisiana, this 29th day of April 2022

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

1 *Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.